Bula NUNLEY and Jimmy Cossey *v.* H.M. ORSBURN

92-706                                              847 S.W.2d 702

Supreme Court of Arkansas
Opinion delivered February 22, 1993

*John Lloyd Johnson*, for appellant.

*Bullock & Van Kleef*, by: *H. Clay Fulcher* and *John D. Van Kleef*, for appellee.

DAVID NEWBERN, Justice. This case involves a boundary dispute between adjacent landowners, appellant Bula Nunley and appellee H.M. Orsburn. The disagreement centers on the location of the southern boundary of Nunley's property and the northern boundary of Orsburn's property. The parties agree on the western point of beginning of the line, but Nunley claims the eastern end of the boundary is 23 feet south of the point contended by Orsburn. Orsburn contends he owns the triangle of land in dispute by virtue of an oral boundary agreement between himself and Nunley. The Chancellor found Nunley and Orsburn agreed on the location of the boundary line, and title to the property in dispute was quieted in Orsburn. The Chancellor also enjoined Nunley and her son, Jimmy Cossey, from interfering with Orsburn's use of the land.

Nunley contends the Chancellor erred by (1) finding she and Orsburn agreed on the proper location of the boundary line, (2) determining a 1990 deed to her invalid, (3) refusing to find she acquired the property by adverse possession, and (4) refusing to determine Orsburn purchased his property with notice of her claim.

Because there is no doubt that there was a boundary dispute, and the Chancellor decided the parties had agreed on a settlement, the first point is the only one we need address. We hold the evidence was sufficient to support the Chancellor's finding that Nunley and Orsburn entered into a valid boundary agreement.

This case begins with a 1960 conveyance of one acre of land from Parker and Betty Sue Parker to Goble and Bula Nunley. The acre conveyed to the Nunleys was located north of land retained by the Parkers. Evidence was introduced that the Nunleys gardened the acre but did not live there.

In January of 1987, Betty Sue Parker and other heirs of the Parker Parker estate conveyed the land located south of the Nunley property to William and Delores Thornsberry. William Thornsberry testified that after he bought the land he was informed that Goble Nunley disagreed with the line set by surveyor John Hale in 1986 which the Thornsberrys thought to be their northern boundary. Dardanelle Abstract & Title insured Thornsberry's title and, as a result of the defect, bought the land back from the Thornsberrys, receiving a warranty deed dated November 19, 1987.

On May 8, 1989, Orsburn bought the property from Dardanelle Abstract & Title with knowledge of the boundary dispute. Bill Strait, the owner of the title company, stated he told Orsburn about the dispute and advised him to get an agreement with Bula Nunley before building anything on the property. Orsburn testified he met on the property with Bula Nunley and the attorney who had represented Goble Nunley's estate, Kenneth Parsley. Orsburn stated he showed Nunley the posts surveyor Hale had put down for the location of the line and asked her if she had any objection to their location. Orsburn said Nunley agreed the boundary line was correct. Orsburn testified he relied on the agreement and placed a storage building on the property and made over $40,000 in improvements on the land.

Parsley testified he believed Nunley and Orsburn agreed on the location of the line by referring to a post which had been placed in the ground. Parsley did not think there was any remaining conflict between Nunley and Orsburn on the location of the line. At trial, Nunley denied having agreed that the Hale survey line would be the boundary between her land and Orsburn's. She testified her husband had told her he owned one acre and 23 feet of property which was not reflected by the Hale boundary line. Nunley admitted paying taxes on only the one acre of land until 1990. Cossey testified he was not present when the alleged agreement was reached between his mother and Orsburn regarding the boundary.

In 1990 Cossey asked Betty Sue Parker to execute a correction warranty deed conveying the land in dispute to Nunley. Parker testified she did not know she was conveying property which had already been conveyed to the Thornsberrys in 1987. Parsley, who prepared the 1990 deed, stated he did not know the property description overlapped a description in an existing deed. He based the 1990 deed on a survey given to him by Cossey.

After Orsburn saw the 1990 deed, he went to see Nunley and reminded her of their prior agreement. Orsburn testified Nunley told him she realized after the agreement that she owned more land than she originally thought. Nunley told Orsburn she was distressed and not thinking straight at the time of the agreement.

In late 1990 or early 1991, Cossey began building a fence on the line Nunley claimed to be the proper boundary between the properties. Because this fence prohibited access to Orsburn's storage facility, he filed this quiet title suit. He also requested a permanent injunction prohibiting Nunley and Cossey from interfering with his use of the land.

The Chancellor quieted title in the disputed land in Orsburn. The Court found Orsburn and Nunley agreed that the boundary line in the 1986 Hale survey would be the northern boundary of Orsburn's property and the southern boundary of Nunley's property. The Chancellor also enjoined Nunley and Cossey from building a fence or interfering with the use of the property.

## Boundary agreement

Nunley argues there was insufficient evidence supporting the Chancellor's finding that she and Orsburn agreed on the location of the boundary line. Although we review chancery cases *de novo*, we will not set aside a chancellor's findings of fact unless clearly erroneous. Ark. R. Civ. P. 52(a)(1992). We must also give due regard to the chancellor's opportunity to judge the credibility of witnesses. *Dudley* v. *Little River County*, 305 Ark. 102, 805 S.W.2d 645 (1991).

For there to be a valid oral boundary line agreement, four factors must be present: (1) there must be uncertainty or dispute about the boundary line; (2) the agreement must be between the adjoining landowners; (3) the line fixed must be definite and certain; and (4) there must be possession following the agreement. *Malone* v. *Mobbs*, 102 Ark. 542, 146 S.W. 143 (1912); *Payne* v. *McBride*, 96 Ark. 168, 131 S.W. 463 (1910). *See Jones* v. *Seward*, 265 Ark. 225, 578 S.W.2d 16 (1979); *Bryson* v. *Dillon*, 244 Ark. 726, 427 S.W.2d 3 (1968).

The Chancellor was presented with considerable evidence that there was a dispute or uncertainty regarding the location of the boundary line prior to the oral agreement. Two prior owners of the property, Thornsberry and Strait, testified they were aware that Goble Nunley contested the location of the boundary line as set by the 1986 survey. Orsburn stated his knowledge of the dispute caused him to enter into a boundary agreement with Bula Nunley. Clearly, Orsburn and Nunley were adjoining landowners as they shared a common boundary line. There was also evidence that the boundary line which had been set by the 1986 survey was definite and certain. Testimony was presented that the line was marked on the property with posts which had been placed on the property by Hale. Finally, there was evidence that after the agreement, Orsburn went into possession by constructing a storage building to which there was no objection by Nunley until after the building was completed. Access to the building required use of the disputed land. We cannot hold the Chancellor's finding of facts clearly erroneous of a boundary agreement was sufficient.

Affirmed.