Jennings and Mitzi OSBORNE *v.* Arleta POWER,
Dick Wallace, Joe H. Smith, Dennis Lucy,
Tom Fiser, Catherine Cockrill

93-1303                                           890 S.W.2d 570

Supreme Court of Arkansas
Opinion delivered December 5, 1994
[Rehearing denied January 23, 1995.*]

---

*Special Justices William S. Arnold and Ernie E. Wright, join. Newbern, Brown, and Roaf, JJ., not participating.

*The Perroni Law Firm, P.A.*, by: *Samuel A. Perroni* and *Mona J. McNutt*, and *Robert "Bob" Lowry*, for appellants.

*Wilson, Engstrom, Corum, Dudley & Coulter*, by: *Gary D. Corum*, for appellees.

WILLIAM S. ARNOLD, Special Justice. This case is before the court on direct appeal from the chancellor's decree finding that a Christmas lights display at the residence of appellants creates a public and private nuisance and violates an applicable bill of assurance.

Appellees cross-appeal on grounds the chancellor erred in dismissing the complaint of two plaintiffs and in her failure to abate the nuisance by entering an absolute injunction against conducting the display. We modify and affirm on direct appeal and reverse and remand on cross-appeal.

This case comes to this court with significant notoriety attached and upon a very sizable record consisting of four thick volumes of testimony plus a number of photographs, video tapes and other recordings of traffic and debris collection and similar matters in the vicinity of the residences of parties to the action during the Christmas season of 1992. A number of issues have been raised by both the direct appeal and the cross-appeal from the determination by the chancellor that private nuisances and a public nuisance existed, along with a violation of a bill of assurance.

## PART I

### Recusal of Chancellor

■■ Appellants assert that the chancellor should have recused from presiding in this case because of having seen the display. The chancellor followed the procedures required by Canon 3 of the Code of Judicial Conduct by disclosing these facts. She followed the procedures and mandates from prior opinions of this court and determined that it was her duty not to recuse unless her failure would be prejudicial to the litigants. There is a duty not to recuse where no prejudice exists. *U.S. Term Limits, Inc.* v. *Hill*, 315 Ark. 685, 870 S.W.2d 383 (1994). The decision on whether to disqualify is of particular difficulty where the judicial officer is both the trier of fact and applies the law. *See City of Jacksonville* v. *Venhaus*, 302 Ark. 204, 788 S.W.2d 478 (1990); *Patterson* v. *R.T.*, 301 Ark. 400, 784 S.W.2d 777 (1990). The standard of review on appeal is whether the trial judge abused his or her discretion in the matter. *Carton* v. *Missouri Pac. R.R.*, 315 Ark. 5, 865 S.W.2d 635 (1993). We cannot say the chancellor abused her discretion in determining that she was not disqualified from hearing this case.

### Finding of Nuisance

■■ The trial court, after exhaustive review of all of the testimony and exhibits and careful consideration of all of the facts, concluded that certain of the plaintiffs had suffered injury greater than that suffered by the public at large and that the effect of appellants' massive and commercial size display was such as to constitute a nuisance under the recognized definitions of nuisance in Arkansas. Appellants, on direct appeal, contend that the findings of fact and conclusion of law are erroneous. On appeal, chancery cases are reviewed *de novo*, but the findings of fact by the chancellor will not be reversed unless they are clearly erroneous, and the burden is upon the appellant to show that the findings are erroneous. *Leathers* v. *W. S. Compton Co.*, 316 Ark. 10, 870 S.W.2d 710 (1994). The findings of fact by the chancellor were not clearly erroneous, and we find on direct appeal that she did not err in applying the law to those facts.

Among many things considered by the chancellor in reaching that conclusion were evidence (1) of periods of extreme traf-

fic congestion on public streets in the area of appellants' residence for protracted periods of time; (2) that the backup of traffic and slow movement of traffic presented a risk of physical danger to pedestrians in the area; (3) that the display attracted many pedestrians in the area; (4) the foot traffic in the area was not confined to the public streets but indeed trespassed upon private property of property owners living nearby the site of the display; (5) that motor vehicle accidents had occurred; (6) that pedestrians attempting to cross public streets in the area were endangered by the mass of motor vehicles moving in both directions; (7) that there was a reasonable basis to believe that, if an emergency occurred in the residential area served by the adjoining streets, emergency vehicles would encounter difficulties in accessing the site where service was required.

■ Appellants contend that appellees suffered no direct physical damage, and, consequently, it was error to issue the injunction abating the nuisance. The argument is without merit. We have numerous cases in which nuisances have been found to exist that did not cause direct physical damage to the premises of other property owners; instead, the property owners' use and enjoyment of their property was made much more difficult, and the offensive activity was abusive to senses of hearing and smell. Examples are found in *Southeast Ark. Landfill, Inc.* v. *State*, 313 Ark. 669, 858 S.W.2d 665 (1993) (smells from landfill); *Higgs* v. *Anderson*, 14 Ark. App. 113, 685 S.W.2d 521 (1985) (noise from dog kennel); *Baker* v. *Odom*, 258 Ark. 826, 529 S.W.2d 138 (1975) (noise from motorcycle race track).

### Violation of Bill of Assurance

The chancellor also found that the operation of the massive light display is prohibited by the bill of assurance of the subdivision in which the appellants' home is located. The relevant language from the bill of assurance reads: "Nor shall anything be done thereon which may be or become an annoyance or nuisance to adjacent residents or the neighborhood."

■ Appellants contend on direct appeal that the chancellor erred in her holding because the language of the bill of assurance is vague and uncertain. The language is not vague or uncertain. A condition which constitutes a nuisance as found by the chancellor also constitutes a violation of the quoted language

in the bill of assurance and the findings to that effect by the chancellor are not clearly erroneous.

### Dismissal of Parties

Our examination of the record persuades us the chancellor erred in finding that Catherine Cockrill and Arleta Power did not have sufficient evidence of special damages to establish a private nuisance as distinguished from a public nuisance.

The deprivation of freedom of access to and from their residences which resulted from the traffic snarls and crowding at the intersection of Cantrell and River Ridge Road was a private nuisance not shared by the general public. Accordingly, on direct appeal, we affirm the holding of the chancellor that the operation of the massive light display constitutes a nuisance, but we modify the chancellor's decree to reinstate Catherine Cockrill and Arleta Power as parties plaintiff.

### PART II

Having concluded, for the reasons stated above, that the operation of the lights display, if continued in substantially the same magnitude as has been the case up to now, is a nuisance, we now take up the cross-appeal and look to means of abatement which are the least restrictive considering the contrasting requisites of protecting rights of free speech and the public interests at stake.

The court is of the opinion that the restraints imposed by the chancellor are insufficient to abate the nuisance in order to protect "the well being, tranquility and privacy of the home [which] is certainly of the highest order in a free and civilized society," *Carey* v. *Brown*, 447 U.S. 455, 471 (1980); *see also Frisby* v. *Schultz*, 487 U.S. 474 (1987). The Supreme Court has stated that ensuring public safety and order, promoting the free flow of traffic on public streets and sidewalks, protecting citizens' property rights and assuring residential privacy is sufficient to justify an appropriately tailored injunction. *Madsen* v. *Women's Health Ctr., Inc.*, 114 S. Ct. 2516, 2526 (1994).

As appellants admitted in their testimony, there is nothing about their religious beliefs which dictates that they must celebrate the Christmas season by a massive display of electric

lights. Consequently, to place limitations upon such activity does not constitute an impermissible burden upon the practice of religion. Clearly, any injunctive relief by way of restricting the scope or magnitude of the display is "content-neutral" and, accordingly, is subject to reasonable restraint that burdens no more speech than necessary to protect the rights enumerated above.

In *Western Presbyterian Church* v. *Board of Zoning Adjustment*, 63 U.S.L.W. 2169 (1994), a recent case involving feeding the homeless pursuant to a church program, the Court held that the zoning ordinance was unconstitutional in its total prohibition and allowed the feeding to be conducted. However, the Court noted that this license was limited to circumstances that did not otherwise become a nuisance, thus recognizing that the Religious Freedom Restoration Act, of itself, would not bar restrictions on activities that are nuisances.

### Abatement

This court has sought to find a solution that would alleviate sufficiently the problems that now exist arising from the display in its present context and magnitude without totally prohibiting any form of Christmas lighting display at this location. The court has considered a variety of things that might be prohibited or restricted in connection with the display that would minimize its adverse impact upon the residences and the residential area where it is located. The court is mindful that the courts generally recognize that the peace and quiet of a residential neighborhood and the protection against obnoxious encroachments are important rights in civilization. *Madsen*, 114 S. Ct. at 2526.

For example, the court has considered whether it might limit the power supply sources to the display to those usually and customarily found in residential areas, and it has considered that the display might be operated at random times without prior public notice of any kind as to the times when it would be lighted, and, of course, it has given consideration to the chancellor's ruling limiting the hours of the day and the number of days in which the display could be operated.

The Louisiana Supreme Court was confronted with a similar situation and the result reached there is applicable to the case

here. *See Rodrigue* v. *Copeland*, 475 So.2d 1071 (La. 1985). In *Rodrigue*, Alvia C. Copeland had erected and operated an annual Christmas display, and a number of his neighbors sought injunctive relief to enjoin the display as a nuisance because the display caused an enormous influx of visitors to their limited access, residential neighborhood. Copeland's Christmas display had grown in size and popularity over a seven-to-eight year period. The Louisiana Supreme Court declared Copeland's display was a nuisance and enjoined Copeland from erecting and operating the Christmas exhibition which was calculated to attract an unusually large number of visitors to the neighborhood. The court added the following instructions, concerning how to abate the display as a nuisance:

> Plaintiffs' injury stems from the nature and size of the display which render it incompatible with a restricted access, residential neighborhood. Defendant is enjoined from erecting and operating a Christmas exhibition which is calculated to and does attract an unusually large number of visitors to the neighborhood.

> In complying with our order, defendant is specifically enjoined from placing oversized lighted figures, such as the reindeer and snowman, in his yards or upon the roof of his residence. The proper place for these "commercial size" decorations is not within a quiet, residential neighborhood. Defendant is also specifically ordered to reduce the volume of any sound accompanying the display so that it is not audible from within the closest homes of his neighbors.

> In limiting his display, the burden is placed on defendant to reduce substantially the size and extravagance of his display to a level at which it will not attract the large crowds that have been drawn to the neighborhood in the past.

> Of course, defendant is free to maintain his display unrestricted, at a location which is appropriate. The injunction granted herein is limited to activity at defendant's premises on Folse Drive.

*Id.* at 1079.

██    This court has concluded that it is not the appropriate medium to either craft the exact restrictions or to monitor the results. Accordingly, on *de novo* review, we hold that the current restrictions are insufficient to abate the nuisance and, much as was done by the Louisiana court in *Rodrigue*, we enjoin cross-appellees, the Osbornes, from placing massive Christmas light displays on and about their home that are calculated to and do attract an unusually large number of visitors to the neighborhood. Further, cross-appellees are ordered to reduce the volume of any sound accompanying the display so that it is not audible from within the closest homes of neighbors.

In ordering the nuisance abated, we place the burden on the cross-appellees, the Osbornes, to reduce substantially the size and extravagance of the display at and about their home to a level which will not attract the large crowds that have been drawn to the neighborhood in the past. Of course, this injunction only applies to the cross-appellees' residence, and they are free to maintain a massive display in an unrestricted manner at a location where it is appropriate. *See Baker* v. *Odom*, 258 Ark. 826, 579 S.W.2d 138 (1975).

We remand the case to the chancery court for enforcement of the injunction and such further proceedings as might be necessary.

Modified and affirmed on direct appeal.

Reversed and remanded on cross-appeal.

SPECIAL JUSTICE ERNIE E. WRIGHT joins.

NEWBERN and BROWN, JJ., not participating.